UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                    ::
CHRISTOPHER BURTON,                                                 :     03-CV-4953 (ARR)

                                    Plaintiff,                      :     NOT FOR ELECTRONIC
                                                                    :     OR PRINT
                                                                    :     PUBLICATION
            -against-                                               :
                                                                    :
WILLIAM PHILLIPS, Superintendent, Green Haven                       :     OPINION AND ORDER
Correctional Facility,                                              :
                                                                    :
                                    Defendant.                      :
                                                                    X
------------------------------------------------------------------

ROSS, United States District Judge:

Petitioner pro se, Christopher Burton, filed a petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 on September 22, 2003. In his original petition, petitioner claimed that:

(1) his trial counsel was ineffective because he failed to conduct an adequate pretrial

investigation, failed to obtain critical exculpatory information, and failed to object to numerous

instances of prosecutorial misconduct; (2) the prosecution wrongly withheld the identity and

prior statements of a witness implicating another as the shooter; (3) the prosecution elicited

perjured testimony by Geovanny Watson, who falsely testified that he was not afforded leniency

in exchange for his testimony; and (4) the trial court abused its discretion by precluding cross-

examination of Geovanny Watson regarding his plea-agreement. On August 24, 2005, this court

granted petitioner leave to amend his petition to include two additional claims: (5) his appellate

counsel was ineffective; and (6) the prosecution failed to disclose material exculpatory evidence

in violation of its duty under Brady v. Maryland, 373 U.S. 83 (1963). For the reasons set forth

below, the court denies his petition.

1

## BACKGROUND

In his petition, Mr. Burton is challenging his convictions arising from charges that he was responsible for the shooting death of Richie Myers and the attempted shooting of Geovanny Watson. At trial, Watson testified for the prosecution that, on the afternoon of July 17, 1995, he had a dispute with the petitioner regarding drug territory. He further testified that the petitioner returned that same evening and, after Myers attempted to warn Watson of petitioner's presence, petitioner shot and killed Myers and attempted to shoot Watson. A second prosecution witness, Tracy Johnson, testified that he had been with Myers immediately prior to the shooting and saw the petitioner firing shots.

Following a jury trial, petitioner was convicted of manslaughter in the second degree, attempted murder in the second degree, reckless endangerment in the first degree, and criminal possession of a weapon on the second degree. He filed a pro se motion to set aside the verdict on the grounds of insufficiency of the evidence, an unduly prejudicial summation by the prosecution and perjury of Watson as a witness for the prosecution. On April 13, 1999, the Supreme Court of the State of New York denied his petition as meritless. Decision, Ind. No. 3251/96 (N.Y. Sup.Ct., Queens Co., Apr. 13, 1999). Mr. Burton was sentenced as a second violent felony offender to concurrent prison terms of seven and one-half to fifteen years for the manslaughter conviction, twelve and one-half to twenty-five years for the attempted murder conviction, three and one-half to seven years for the reckless endangerment conviction, and seven and one-half to fifteen years for the criminal possession of a weapon.

The petitioner appealed his conviction to the Appellate Division. In a brief filed by appellate counsel, he claimed that the trial court violated his constitutional right to confront witnesses by precluding defense counsel from cross-examining the primary prosecution witness, Watson, regarding his motive to lie and bias towards the defendant. (Appellant's Br., June 16,

2

2000.) Mr. Burton also filed a supplemental pro se brief, arguing that (1) the prosecution failed to establish probable cause for Mr. Burton's initial arrest, and (2) trial counsel was ineffective. (Appellant's Br., Dec. 27, 2000.) On September 24, 2001, the Appellate Division affirmed the conviction, stating that, after defense counsel elicited admissions from the prosecution's witness that he lied to the police and the Grand Jury and that he was a drug dealer, the trial court properly limited attempts to further impeach the witness. People v. Burton, 286 A.D.2d 772, 773 (N.Y. App. Div, 2d Dep't 2001). The court dismissed the remaining contentions as meritless. Id. Thereafter, petitioner sought leave to appeal to the New York State Court of Appeals, which was denied by order dated December 28, 2001. People v. Burton, 97 N.Y.2d 679 (N.Y. 2001).

Petitioner then filed a pro se motion in New York State Supreme Court to vacate his judgment of conviction, pursuant to N.Y. Criminal Procedure Law § 440.10. In his motion, which was affirmed by Mr. Burton's appellate counsel, he claimed that: (1) the prosecution withheld police reports of Watson and an officer's memo book in violation of People v. Rosario, 9 N.Y.2d 286 (1961); (2) a police report of information provided by a tipster known as "Tony" was not provided to the defendant in violation of Brady v. Maryland, 373 U.S. 83 (1963); (3) a cooperation agreement between the prosecution and Watson was not disclosed in violation of Giglio v. U.S., 405 U.S 150 (1973); (4) the prosecution knowingly allowed Watson to give perjured testimony; (5) the court should admit, as newly discovered evidence, testimony of an eyewitness, Jason Morrison, suggesting that Mr. Watson was involved in the shootout; and (6) trial counsel ineffectively represented the petitioner for failing to locate "Tony" or Morrison and failing to request a ballistics report on Watson's gun. Petitioner also requested a ballistics test to be conducted and stated that the police had failed to respond to his requests under New York's Freedom of Information Law for reports of interviews with Watson. (Def.'s Aff. Sept. 17, 2002 ; Affirmation of Appellate Counsel, Oct. 11, 2002.) On December 18, 2002, the state court denied

3

his motion. The state court ruled that the petitioner's claims of failure to disclose materials pursuant to Rosario, Brady, and Giglio and his newly discovered evidence claim were barred by Crim. Proc. § 440(3)(a) because, while petitioner could have produced these facts with due diligence, he unjustifiably failed to make these facts appear on the record prior to sentencing. Id. The court further held that petitioner's claim of ineffective assistance of trial counsel was procedurally barred by N.Y. Crim. Proc. § 440.10(2)(a), because it had already been determined on the merits by the Appellate Division. New arguments raised by Mr. Burton for ineffective assistance of counsel were held to be barred by Crim. Proc. § 440.10(2)(c) (requiring denial of a motion to vacate a judgment when the defendant unjustifiably failed to raise such ground or issue upon appeal). Finally, the state court determined that the defendant failed to state a legal basis for relief regarding the non-disclosure of the police reports and other materials, nor did he show the evidence was favorable to him and would have been reasonably likely to affect the proceedings. Id. (citing Crim. Proc. § 440.30(4)(a) and People v. Vilardi, 76 NY2d 67 (1990)). The Appellate Division denied petitioner leave to appeal this decision on September 3, 2003. People v. Burton, Decision and Order on Application, Ind. No. 3241/96 (N.Y. App. Div, 2d Dep't, September 3, 2003).

On September 22, 2003, petitioner filed this petition for a writ of habeas corpus pursuant to 8 U.S.C. § 2254. In response to petitioner's request, by order dated February 4, 2003, the court stayed the petition pursuant to Zarvela v. Artuz, 254 F.3d 374 (2d Cir. 2001), so that petitioner could exhaust his claim of ineffective assistance of appellate counsel by way of a writ of error coram nobis in state court. On June 1, 2004, the Appellate Division, Second Department, dismissed the petitioner's application for a writ of error coram nobis. People v. Burton, 8 A.D.3d 292, 293 (N.Y. App. Div., 2d Dep't, 2004). The Court of Appeals denied his application for leave to appeal on August 3, 2004. People v. Burton, 3 N.Y.3d 671 (N.Y. 2004).

4

On August 18, 2004, the petitioner informed the court that he has fully exhausted this claim and requested leave to amend his habeas petition, under Fed. R. Civ. P. 15(c), to include his ineffective assistance of appellate counsel claim. Petitioner further requested the court to continue his Zarvela stay so that he may exhaust an additional claim that the prosecution failed to disclose material exculpatory evidence in violation of its duties under Brady, 373 U.S. 83, and to add his Brady claim to his habeas petition in the event the state court denies relief. On March 23, 2005, the court granted petitioner's motion to amend his complaint and further stayed the amended petition pending state court's review of petitioner's Brady claims.

On April 14, 2005, the petitioner filed his second motion to vacate his judgment of conviction in New York State Supreme Court under Crim. Proc. § 440. The basis for his claim was that, contrary to the requirements of Rosario and Brady, the prosecution did not disclose prior statements by Watson, namely that (1) Watson did not mention defendant's crime when initially arrested for gun possession one month after the shooting and (2) his agreement to act as a government informant. Petitioner further claimed that the prosecution failed to correct false testimony by Watson during petitioner's trial. The state court held that the evidence presented by petitioner in support of his Rosario and Brady claims could not serve as a basis to vacate judgment under N.Y. Crim. Proc. § 440.10(g), since it did not constitute newly discovered evidence, as it could have been discovered with due diligence and was unlikely to have changed to result of the trial. People v. Burton, 9 Misc.3d 577, 583 (N.Y. Sup. Ct., Queens Co., 2005). The court further held that petitioner had not established a violation of Brady or Rosario because the documents were not material to the verdict. The court therefore denied petitioner's motion in its entirety, id., and, on September 14, 2005, the Appellate Division, Second Department, denied leave to appeal. People v. Burton, Decision and Order on Application, Ind. No. 3251/96 (N.Y.

5

App. Div., 2d Dep't, Sept. 14, 2005). By order dated November 23, 2005, the court lifted the stay.

## DISCUSSION

### I. AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996,

established a deferential standard that federal habeas courts must apply when reviewing state

court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statutory language "clearly established Federal law, as determined by the Supreme Court of

the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362,

412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent

if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]

Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With

respect to the "unreasonable application" clause, "a federal habeas court ... should ask whether

the state court's application of clearly established federal law was objectively reasonable." Id. at

409. In determining whether an application was objectively unreasonable, "the most important

point is that an unreasonable application of federal law is different from an incorrect application

of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although

6

"[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)). In addition, a "conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with federal law, . . . [a]bsent a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v.

7

Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-bar determinations).

## II.    **Procedural Default**

Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989)). In order for federal review to be procedurally barred, the state court's reliance on state law must be "clear from the face of the opinion." Id. (internal quotation marks and citation omitted). The Second Circuit held in Fama that where the state court uses language such as "the defendant's remaining contentions are either unpreserved for appellate review or without merit" the claim is subject to federal review. Id. at 810-11. The court's decision in Fama did not overturn prior rulings, however, that a state court decision constitutes a procedural default where the court stated that a claim was "not preserved for appellate review" before ruling "in any event" on the merits. Id. at 810 n.4.

Where a state court rules against a petitioner on procedural grounds, the petitioner faces a "procedural default" precluding federal habeas review. A procedural default may be excused by a federal court, however, if the petitioner demonstrates either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). "To be credible, such a claim requires petitioner to support his allegations of constitutional error

8

with new reliable evidence ... that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). A petitioner establishes actual innocence by demonstrating that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks and citations omitted).

## PETITIONER'S CLAIMS

### I. *Brady* Claims

Petitioner alleges that the government withheld information it was required to disclose under Brady v. Maryland, 373 U.S. 83 (1963). Specifically, petitioner complains that three material pieces of evidence were withheld: (1) a police report containing a statement made by Watson upon his arrest for gun possession in which he stated that the gun belonged to someone else, contradicting his trial testimony that he carried the gun to protect himself from petitioner; (2) evidence that Watson was charged with crimes that violated the terms of his probation and yet received lenient treatment, which petitioner argues could have been used to demonstrate at trial that the witness had a motive to lie; and (3) evidence that Watson had an agreement with the police to act as an informant in an unrelated investigation.

A petitioner may be entitled to habeas relief if the government violates his federal constitutional rights by failing to turn over material exculpatory evidence before trial. But, materiality is a requisite of such a claim. Giglio v. United States, 405 U.S. 150, 153-54 (1972). Exculpatory evidence is "material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler v. Greene, 527 U.S. 263, 280 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). A petitioner is only entitled to relief if the prosecution's failure to turn over Brady material

9

"undermines confidence in the outcome of the trial." Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678).

The petitioner presented his Brady claims to the New York State Supreme Court via a motion under New York Crim. Proc. § 440, People v. Burton, 9 Misc.3d 577, and leave to appeal was denied by the Appellate Division, Second Department. The New York State Supreme Court determined that the evidence presented by Mr. Burton did not meet the criteria for newly discovered evidence set forward in Crim. Proc. § 440.10(g) and therefore could not be used as a ground to vacate petitioner's conviction under that provision. However, this determination does not constitute an independent and adequate basis for the state court decision, because, even if evidence is not newly discovered, it can still be used as a basis to vacate the judgment of conviction if it was obtained in violation of federal constitutional rights. See N.Y. Crim. Proc. § 440.10(1)(g). Because the state court also rejected his claim on the merits, it is appropriate for this court to review that decision under the deferential standard set forth in AEDPA.

This court finds that there is no basis for granting the petitioner relief, because the state court adjudication was not the result of an unreasonable application of or contrary to clearly established federal law as required by 28 U.S.C. § 2254(d)(1). The state court found that the police report did not constitute Brady material because it "does not mention defendant[,] [i]t is not favorable to defendant, not material to guilt or innocence and its disclosure would not likely have any effect on the verdict." People v. Burton, 9 Misc.3d at 866. In reaching this conclusion, the state court reasonably applied the correct standard to the facts of the case. Even if Watson did not initially discuss petitioner's crime when arrested, the evidence suggests that he did so later. Furthermore, any inconsistency with his trial testimony was not material enough to have affected the verdict, particularly when, as established by the Appellate Division on petitioner's direct appeal, Mr. Burton's attorney had already elicited at trial admissions from Watson that he

10

had lied to the police and the Grand Jury. People v. Burton, 286 A.D.2d at 773. There is also no grounds for disturbing the state court's finding that there was no evidence to support the alleged agreement between Watson and the police relating to a different investigation. See People v. Burton, 9 Misc.3d at 866. The existence of an agreement to cooperate between the prosecution and its witnesses is a factual determination that is presumed to be correct unless rebutted by clear and convincing evidence. Shabazz v. Artuz, 336 F.3d 154, 161 (2d Cir. 2003). No such evidence has been presented here. All that petitioner has shown is a statement in Watson's own arrest report in which he offered to cooperate in a police investigation related to weapons sales. The existence of an actual agreement is purely conjectural. Even if there was an agreement, petitioner has failed to demonstrate that this agreement was material to defendant's conviction. Although unclear, the state court did not appear to have directly addressed the issue of whether the failure to turn over the transcripts from Watson's subsequent legal proceedings, which could show only that he received lenient treatment, constitute Brady violations. However, the likelihood that the transcripts would be material to petitioner's verdict are similarly remote, as any connection between the two is purely speculative. Therefore, this court finds that the state court did not unreasonably apply Brady and dismisses the petitioner's claim as meritless.

II.     *Perjured Testimony*

        In petitioner's habeas petition, he alleges his due process rights were violated because the prosecutor knowingly allowed its witness to commit perjury by failing to correct Watson's testimony at trial that he had not been promised leniency in exchange for his trial testimony.

        A conviction based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264, 269 (1959) (citations omitted). The petitioner has the burden of demonstrating, by a preponderance of evidence, that the witness

11

committed perjury, see Ortega v. Duncan, 333 F.3d 102, 106 (2d Cir. 2003), and, in determining

whether perjury occurred, a court must "weigh all the evidence of perjury before it." Id. at 107.

A conviction must be set aside if "the prosecution knew, or should have known, of the perjury,"

and "there is any reasonable likelihood that the false testimony could have affected the judgment

of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976). The Second Circuit held in

Ortega that, "when false testimony is provided by a government witness without the

prosecutions' knowledge, due process is violated only if the testimony was material and the court

is left with a firm belief that but for the perjured testimony, the defendant would most likely not

have been convicted." 333 F.3d at 106 (internal quotation marks and citations omitted)

(emphasis added).

Mr. Burton presented this claim to the New York state courts in his 2002 motion under

New York Crim. Pro. § 440, and it was dismissed in its entirety. See People v. Burton, Ind. No.

3251/96 (N.Y. Sup. Ct., Queens Co., Dec. 18, 2002). It is unclear from the state court decision

whether the perjury claim was disposed of on procedural grounds or on the merits. Regardless,

Mr. Burton's claim is unsuccessful, as he has failed to demonstrate that the state's witness

committed perjury by lying about the existence of an agreement with the state or that the

government was aware of such an agreement. The evidence petitioner presents in support of his

claim that there was an agreement between the prosecution and Watson that he would receive

leniency in exchange for his testimony at petitioner's trial is entirely speculative. Petitioner

alleges that, in violation of Mr. Watson's terms of probation, Watson was arrested twice in 1998

and the cases were adjourned in contemplation of dismissal and the arrest records sealed. Even if

this court accepts these allegations as true, they would not constitute a sufficient basis to find that

there was a deal to grant the witness leniency in exchange for testimony such that the prosecution

knew that the testimony was false. Furthermore, even if there was an agreement, the petitioner

has failed to make the requisite showing that disclosure of this agreement would have likely changed the verdict in his case, particularly when petitioner's attorney at trial had already impeached the witness.[1]

III. _Ineffective Assistance of Trial Counsel_

Petitioner raises four bases for his claim that he was denied effective assistance of trial counsel: (a) insufficient investigation of potential witnesses and ballistics evidence; (b) failure to rely on or investigate a tipster's report that another person was responsible for the shooting; (c) failure to investigate petitioner's medical records with a purpose of showing that petitioner was physically incapable of being the shooter; and (d) failure to object to prosecutorial misconduct. Although petitioner brought a claim of ineffective assistance of counsel in his direct appeal of his conviction, attacking counsel's assistance in the pre-trial proceedings and in conjunction with his cross-examination of Watson, he did not raise these four bases for the claim until his first § 440 motion. The state court considered these additional claims of ineffective assistance of counsel to be procedurally barred under C.P.L. § 440.10(2)(c), which requires the court to deny a motion to vacate judgment when the defendant unjustifiably failed to raise these grounds on appeal. People v. Burton, Ind. No. 3251/96, Dec. 18, 2002. The state court then went on to deny petitioner's

---

[1] In the factual section of his habeas petition, Mr. Burton also alleges that Watson's testimony that petitioner shot Myers was perjured and, in his reply, he called for an evidentiary hearing on this issue. Apparently in relation to this allegation, petitioner submitted to the state court in his second § 440 action an affidavit from Keith Bonner, an inmate at Green Haven Correctional Facility, dated October 27, 2004. Bonner's affidavit states that Watson told him in August 1996 that he had lied to the police about seeing Mr. Burton shoot Myers. However, in his action before the state courts, petitioner did not claim that the alleged perjury violated his state or federal rights. Furthermore, he did not request an evidentiary hearing, nor, as his only basis for this claim was a hearsay affidavit, did he present competent evidence that would warrant one. Although this claims is technically unexhausted, it would be procedurally barred in any further action. Petitioner having failed to demonstrate cause and prejudice for the delay in raising this claim, the court dismisses it.

13

claims in their entirety under N.Y. Crim. Pro. § 440.30(4)(a) on the grounds that they were "often contradicted by the record, as well as unreasonable on their face." Id. Under Fama, the state court's ruling constitutes a clear and unambiguous reliance on the procedural violation as a basis for its decision. See 235 F.3d at 810 n.4.

However, the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts. See James v. Kentucky, 466 U.S. 341, 348-49 (1984). New York's requirement that defendants raise issues on direct appeal where "sufficient facts appear on the record of the proceeding underlying the judgment," N.Y. Crim. Proc. Law § 440.10[2][c], has been applied to ineffective assistance of counsel claims that are demonstrable without resort to matters outside the record. See Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003). However, New York courts have recognized that ineffective assistance of counsel claims that rely primarily on matters outside the record are better suited for collateral review. Id. (citing People v. Harris, 109 A.D.2d 351 (N.Y. App. Div., 2d Dep't 1985); see also Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) ("Denial of a 440.10 motion, pursuant to 440.10(2)(c), will not always be appropriate in the ineffective assistance context"). As the petitioner's claims of ineffective assistance of counsel all relate to matters that were not readily apparent in the trial record, I review them on the merits, under the deferential standard established by AEDPA. That is, petitioner would only be entitled to habeas relief if the state court's decision was contrary to or involved an unreasonable application of Supreme Court precedent.

(a) <u>Insufficient investigation of potential witnesses or ballistics evidence</u>

Petitioner claims he was denied effective assistance of trial counsel because counsel failed to sufficiently investigate the shooting. The basis for petitioner's claim is that he,

subsequent to his conviction, located a witness who signed an affidavit that he saw the shooting come from a location different from the one where petitioner allegedly shot Myers. The place where the witness claims to have seen the shots come from more closely approximates the area where Watson testified that he was located at the time of the shooting. Petitioner therefore argues that his counsel was ineffective because he failed to locate this witness and he did not request a ballistics test on Watson's gun. On this basis, petitioner claims that his trial counsel violated his "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" under the standard established by Strickland v. Washington, 466 U.S. 668, 690-91 (1984).

Petitioner has not made the required showing that trial counsel's investigation was so poor as to constitute ineffective assistance of counsel, nor that the state court's unreasonably applied the constitutional standard. A petitioner seeking to attack his conviction based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89 (1984). While the testimony of the additional witness located by the petitioner might have been useful at trial, the fact that trial counsel either did not locate this witness or chose not to rely on his testimony at trial and his decision not to request a ballistics test of Watson's gun are insufficient to establish that trial counsel failed in his duty to reasonably investigate petitioner's case. Furthermore, while the affidavit presented provides support for an argument that there might have been another shooter that evening, it does not exonerate Mr. Burton from the crime for which he was convicted and thus is also insufficient to establish that he would have been found innocent if this evidence was introduced.

15

(b) <u>Failure to rely on or investigate a tipster's report that another person was responsible for the</u> <u>shooting</u>

Petitioner claims that his trial counsel was ineffective, because he failed to fully investigate a report by a caller "Tony" who phoned police soon after the crime and reported that a person named "Born Truth" was responsible for the crime. The police report was found in trial counsel's file but was never alluded to during trial. However, failure of counsel to use this evidence or, if "Tony" could have been located, to call him as a witness is not sufficient to constitute ineffective assistance. Courts are required to grant significant deference to the judgment of counsel in choosing their defense, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690. Consequently, "[s]trategic choices of trial counsel 'are virtually unchallengeable' in habeas corpus proceedings." <u>Bonneau v.</u> <u>Scully</u>, 1991 U.S. Dist. LEXIS 7150 (S.D.N.Y. 1991) (citation omitted), aff'd without op., 956 F.2d 1160 (2d Cir. 1992); <u>see also</u> <u>Walker v. Henderson</u>, 492 F.2d 1311, 1313 (2d Cir. 1974) ("decision to call or bypass particular witnesses is peculiarly a question of trial strategy . . . which courts will practically never second guess" in considering allegation of ineffective assistance of counsel). Although the tipster's report could have been useful to the defense's case during trial, it is possible that either Mr. Burton's attorney investigated the report and found it not to be credible or he was not able to locate the tipster. Regardless, the existence of the tipster's report, in and of itself, is insufficient to meet the high standard of demonstrating ineffective assistance of counsel.

(c) <u>Failure to investigate petitioner's medical records</u>

Mr. Burton claims that trial counsel's failure to rely on Mr. Burton's medical records constitutes ineffective assistance of counsel. However, this allegation is spurious. While Mr.

16

Burton alleges that these records show that it was physically impossible for him to have been responsible for the crime for which he was convicted, they do not do so. They only show that, approximately two years prior to the time that the crime was committed, petitioner was treated for a gun shot wound. They do not establish, as petitioner claims, that his ability to walk was severely impaired such that he could not have been responsible for the crime. As such, New York courts did not unreasonably apply federal law in their dismissal of an ineffective assistance of counsel claim on these grounds.

(d) Failure to object to prosecutorial misconduct

In his final claim of ineffective assistance of counsel, petitioner alleges that trial counsel was remiss for failing to object to the prosecution's withholding of relevant material concerning Watson's arrest on matters prior to Mr. Burton's trial. However, as discussed above, petitioner has failed to establish that these documents constituted Brady material and, therefore, failure of trial counsel to insist on their production could not have constituted ineffective assistance. Furthermore, as discussed above, petitioner has not established that–even if defense counsel had obtained these records–petitioner would likely not have been convicted. A claim of ineffective assistance of counsel cannot be based on "the failure to make a meritless argument." United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir.1995) (denying ineffective assistance claim in part because motions not pursued by counsel lacked merit). Thus, Mr. Burton has failed to demonstrate that the state courts unreasonably applied federal law in determining that petitioner was not denied effective assistance of trial counsel.

IV.    *Trial court's limitation of cross-examination of prosecution witness*

Petitioner alleges that the trial court's limitation of defense counsel's cross-examination of Watson violated his Sixth Amendment rights to confront witnesses against him. Petitioner

claims that the line of questioning that was precluded would have established Watson's motive to lie, bias and hostility. Specifically, petitioner asserts that his rights under the Confrontation Clause were violated by the trial court's preclusion of three lines of questioning: (1) whether Watson was pressured to testify against petitioner by a man named Robert Johnson, who had shot petitioner a year prior; (2) whether Watson was pressured to testify against Burton by a man named Robert Hightower, who was friends with the victim; and (3) whether Watson had lied about his reason for possessing a gun when he was arrested on gun charges. Petitioner raised this claim when he directly appealed his conviction and it was dismissed by the appellate court. The state court found that the trial court properly limited defense counsel's attempts to impeach the witness after Watson admitted that he had lied to the police and the Grand Jury. The court stated that this claim raised issues that were "too slight, remote, or conjectural to have any legitimate influence in determining the facts at issue." People v. Burton, 286 A.D.2d at 773. Petitioner has not shown that the state court decision unreasonably applied federal law.

The Confrontation Clause guarantees the defendant in a criminal case the right to cross-examine the witnesses against him. See, e.g., Delaware v. Van Ardsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Questions that go to demonstrating that the witness is biased or self-interested are especially protected. Id. A defendant states a constitutional violation by showing "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness[.]" Van Ardsdall, 475 U.S. at 680, 106 S.Ct. at 1436. It is particularly important that the defendant have a reasonable opportunity to show bias or self-interest when the witness is the complainant and the sole eyewitness to the alleged crime. Henry v. Speckard, 22 F.3d 1209, 1214 (2d Cir.1994). The Supreme Court has emphasized, however, that even when curtailing inquiry into potential bias or motive, trial judges

18

retain "wide latitude" to impose "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Ardsdall, 475 U.S. at 679, 106 S.Ct. at 1435. Furthermore, "[c]ross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a discriminating appraisal of the particular witness's credibility." United States v. Roldan-Zapata, 916 F.2d 795, 806 (2d Cir. 1990) (internal quotation marks omitted).

Petitioner first complains that his trial attorney was not allowed to pursue questioning related to claims that Watson had been asked to testify by Johnson. In a sidebar at trial, defense counsel alleged that Watson's employer works for Johnson, who had shot the petitioner a year prior to trial. See Tr. at 622-23. Defense counsel therefore sought to ask Watson about his relationship with Johnson in order to elicit this connection. Id. At trial, defense counsel questioned Watson regarding his relationship with Johnson and Boo, Watson's employer. He responded that he had not worked for either Johnson or Boo but knew both from the neighborhood. Tr. at 571-72. The trial judge sustained the prosecution's objection to further questioning. Tr. at 572. However, defense counsel subsequently asked Watson, "Isn't it a fact you're only pointing out Mr. Burton as the killer in this case because you were told to do that by somebody?" and Watson responded, "Yo, I was out there, all right? I was out there. Nobody didn't tell me to do nothing." Defense counsel then followed up, "Robert Johnson didn't tell you to come in here and finger Chris?" and the witness responded, "No, he didn't." Tr. at 602. From this questioning, defense counsel had sufficient opportunity to ask whether Watson had an employment relationship with Johnson and whether Johnson or anyone else had asked Watson to testify.

19

Petitioner's second argument is that the trial court prevented defense counsel from questioning Watson regarding allegations that he was pressured by Hightower, a friend of the victim, to testify falsely against the petitioner. However, this claim is belied by the record. In a side bar, defense counsel told the court that questioning related to Hightower was relevant because an intermediary had said Hightower prevailed upon Watson to testify even though "he didn't want to implicate Mr. Burton and he didn't want to be a snitch and didn't want to be involved and he didn't want to say he did anything wrong." Tr. at 623-24. All this says is that Watson testified against the petitioner despite the fact that he did not want to do so, not that Watson falsely testified. Although tangentially relevant, this proposed line of questioning does not help to establish a motive to lie. The trial judge explained that he prevented this line of questioning because it was "so far removed from the issues in this case and requires so many other witnesses involved." Tr. at 625. Thus, the trial judge was acting well within his latitude to avert confusion of the issues, and his exclusion of further questioning in this regard was not constitutionally impermissible.

Petitioner's third argument was that the trial court improperly precluded questioning regarding Watson's reason for possessing the gun he owned. Upon an arrest for gun possession one month after the crime, Watson claimed that he carried the gun to protect himself against petitioner, and defense counsel sought to ask him whether he actually possessed the gun because he was an enforcer for a local construction worker's coalition. Tr. at 624. The connection between this line of questioning and a motive to lie is tenuous. Defense counsel had already ably demonstrated the inconsistencies between Watson's statements upon arrest, his testimony at the Grand Jury, and his trial testimony on matters much more directly connected to the events the night of the shooting. Therefore, the state court's determination that precluding further

questioning of the witness on these grounds did not violate Mr. Burton's rights under the confrontation clause was not an unreasonable application of federal law.

V.    _Ineffective Assistance of Appellate Counsel_

Petitioner argues that he was deprived of effective assistance of appellate counsel for failure to raise two claims on direct appeal: (1) ineffective assistance of trial counsel, and (2) insufficiency of the evidence. Petitioner requested an application for a writ of error corum nobis on grounds of ineffective assistance of appellate counsel from the Appellate Division, Second Department, which denied his application on the merits. Thus, the court reviews his claim under the deferential standard established by AEDPA.

In analyzing a claim that counsel's performance fell short of constitutional standards, it is not enough for a petitioner to show that his appellate counsel omitted a nonfrivolous argument. Aparicio, 269 F.3d at 95. Instead, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689). As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Strickland, 466 U.S. at 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with his counsel's strategy. See Jones v. Barnes, 463 U.S. 745, 752 (1983) (explaining

21

that an indigent appellant does not have the right to compel appointed counsel to press every nonfrivolous point on appeal and recognizing "the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review"); Mayo, 13 F.3d at 533 ("[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made.").

A habeas petitioner may establish constitutionally deficient assistance if he shows that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000). However, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." Aparicio, 269 F.3d at 99 (internal quotation marks and citations omitted). Finally, even if an attorney's performance were objectively unreasonable and unprofessional, the petitioner must still prove prejudice. That is, the petitioner must show "'a reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" Id. at 95 (quoting Strickland, 466 U.S. at 694).

The state court record supports the conclusion that appellate counsel engaged in significant review of the trial transcript, discussed proposed legal claims with the petitioner, and strategically selected one issue for direct appeal. In a letter to Mr. Burton, appellate counsel stated that he had decided it would be in petitioner's best interests for the appellate brief to focus on the trial court's limitations of defense counsel's cross-examination. He explained:

> the issue I suggest is clearly superior to any of the other potential issues we could raise. . . . if we add more than one issue, sometimes the appellate court will "dodge" the best issue by writing about a lesser one and stating 'defendant's other claims are without merit." . . . While it is true that filing a one-issue brief renders all other issues unpreserved, what good are preserving losing issues? The one issue I suggest is preserved, is relatively strong compared to other potential issues in the case, and

> states a strong federal claim. I think we would be foolish not to proceed on that issue alone.

(Ltr. from Paul Laisure to Christopher Burton, May 30, 2000). Appellate counsel therefore rejected Mr. Burton's suggestion that he appeal on grounds of insufficiency of the evidence because he believed that the appropriate standard had not been met. Id. Petitioner has failed to offer grounds for refuting counsel's decision that this claim had no merit or for demonstrating that the result of the proceeding would have been different had the claim been brought.

Similarly, petitioner has not sufficiently supported his contention that he was provided with ineffective assistance of appellate counsel because counsel failed to raise a claim of ineffective assistance of trial counsel on direct appeal. While appellate counsel expressed his opinion that petitioner had been ably represented at trial, he offered petitioner the option to raise additional claims via a pro se supplemental brief. Petitioner followed his advice and filed a pro se supplemental brief in the direct appeal of his conviction on the basis of failure to establish probable cause for his initial arrest and ineffective assistance of trial counsel. Petitioner subsequently filed a pro se motion in a collateral appeal under N.Y. Crim. Pro. § 440 to raise an ineffective assistance of trial counsel claim on additional grounds. The same appellate counsel who represented petitioner on direct appeal filed an affirmation in support of those claims. As explained above, the grounds for his ineffective assistance of counsel claim in his collateral appeal were not apparent from the trial record. Furthermore, petitioner has failed to meet his burden of showing that he was ineffectively represented by trial counsel. Consequently, appellate counsel could not be found to have ineffectively represented petitioner for failing to pursue this claim on direct appeal and choosing instead to focus on the somewhat stronger argument that petitioner's rights under the confrontation clause had been violated. In so finding,

the state courts have not unreasonably applied federal law in rejecting petitioner's claim of ineffective assistance of appellate counsel.

VI.   *Request for Discovery on Brady and Perjury Claims*

Petitioner further requests discovery in order to substantiate his claims that the government failed to turn over relevant materials contrary to their obligations under Brady v. Maryland, 373 U.S. 83 (1963), and knowingly allowed a prosecution witness to commit perjury on the stand when he stated he did not have a leniency agreement with the government. Specifically, petitioner seeks further disclosure of materials relating to the circumstances related to the disposition of the arrests of Watson prior to trial. For reasons explained below, the court denies this request.

As the Supreme Court has noted, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Under Rule 6(a) of the Rules Governing Section 2254 Cases, "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Thus, the question presented to the court is whether the petitioner has shown sufficient good cause to warrant the granting of his discovery request.

After reviewing the petition and the parties' discovery submissions, the court does not find the requisite good cause to warrant discovery of the information requested. Petitioner has failed to show that it is likely that a leniency agreement existed. Even if the record supported his claims that Watson was arrested three times while on probation but was not resentenced, petitioner has not demonstrated a sufficient link between Watson's testimony at Burton's trial

24

and his lenient treatment to warrant discovery. Other than plaintiff's conclusory allegations that an agreement between the prosecution and its witness existed, the court has no basis for questioning the government's contention that it did not. The court therefore finds that the petitioner has failed to present sufficient good cause to warrant discovery of the requested materials.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: October 12, 2006
      Brooklyn, New York

SERVICE LIST:

*Petitioner pro se*

Christopher Burton
99A2392
Green Haven Correctional Facility
PO Box 4000
Stormville, NY 12582-0010

*Counsel for respondent*

Queens County District Attorney
125-01 Queens Boulevard
Kew Gardens, NY 11415